177 So.2d 571

**Otis W. McBRAYER et al.**

v.

**Victoria SMITH.**

**8 Div. 172.**

Supreme Court of Alabama.

July 15, 1965.

T. J. Carnes, Albertville, for appellants.

Clark E. Johnson, Jr., Albertville, for appellee.

HARWOOD, Justice.

For and in consideration of support and care during her life, Victoria Smith, then

about 81 years of age, and the complainant below, did convey to the respondents, Otis W. McBrayer and Lucille McBrayer, her house and lot in Albertville, Alabama. Otis McBrayer is a great nephew of Victoria Smith, and the McBrayers had been living with Mrs. Smith for some time prior to the conveyance.

The arrangement soured soon after the execution of the deed.

In August 1962, Victoria Smith filed a bill seeking cancellation of the deed, under Section 15, Title 20, Code of Alabama 1940, which provides:

"Any conveyance of realty, of which a material part of the consideration is the agreement of the grantee to support the grantor during life, is void at the option of the grantor, except as to bona fide purchasers for value, lienees, and mortgagees without notice, if, during the life of the grantor he takes proceedings in equity to annul such conveyance."

The respondents filed their answer and cross bill. The cross bill prayed that the court determine the amount the respondents are entitled to as compensation for support, maintenance, and services rendered Victoria Smith pursuant to the deed, and upon such determination that a lien be fixed upon the property to secure the payment of such amount as determined.

The record in this case is voluminous. One witness testified by deposition, several witnesses testified ore tenus before the Register, and a very substantial part of the testimony was heard by the court.

The court entered a decree holding null and void the deed from Victoria Smith to the McBrayers, and adjudging that they have and recover the sum of $3,500 for services to Mrs. Smith, for expenditures made on her behalf, and for the relatively minor improvements made by the McBrayers on the suit property. The court further established a lien on said property for said amount.

The court further decreed that the complainant be taxed with the costs of her witnesses, and the respondents be taxed with all other costs.

As before stated, the evidence presented below is voluminous. In addition to the testimony of the complainant and the respondents many relatives and friends of the respective parties testified. Our review, however, has been greatly facilitated by the splendid briefs filed by the respective parties, particularly their recitation of the facts.

This evidence tends to show that at the time the deed was entered into Mrs. Smith was about 81 years of age, and in poor health. Likewise her house was quite old and in a most dilapidated condition. When the parties were living in the old home Mrs. Smith, during the first few years, had her meals with the respondents who are now the appellants. According to the appellants, Mrs. Smith was unappreciative of all their efforts in her behalf, was personally unclean, and of a sulky disposition. On 1 March 1954, Mrs. Smith broke her hip. After seventeen days in the hospital, during which time the appellants did most of her nursing, Mrs. Smith returned to the old home. Thereafter she has been continuously confined to a wheel chair. In the old home, upon the return of Mrs. Smith from the hospital, the appellants moved into a room adjoining Mrs. Smith's room in order to be near at hand to Mrs. Smith and to answer her needs.

It is the testimony of the appellants that Mrs. Smith became more and more untidy, refused to bathe often, and developed a highly offensive odor.

Eventually, because of Mrs. Smith's uncleanliness, the appellants found it highly offensive to have her eat with them, and began taking her meals to her.

As early as 1954, the appellants began discussing with Mrs. Smith the dilapidated and unsatisfactory condition of the old house and the impossibility of continuing

to live therein. They presented her with three alternatives, either that Mrs. Smith move to a nursing home, or that the appellants would leave and furnish a caretaker for Mrs. Smith, or that the appellants themselves would build a new home and Mrs. Smith could accompany them thereto. Finally, in 1960, Mrs. Smith informed the appellants that if they would build a new home she would move thereto with them. Thereafter, the appellants did build a new home which they value at $35,000. This new house has central heating and central air conditioning. A proposed garage was turned into a room for Mrs. Smith. However, this garage was not connected with the heating or air conditioning unit of the main house. The level of the floor of this garage room was several inches below that of the main house, and entry to the garage room was above ground level. Thus it was impossible for Mrs. Smith to leave her room without assistance.

The evidence presented by the appellants is to the effect that the meals furnished Mrs. Smith were palatable and that her living quarters were comfortable.

On the other hand the evidence in behalf of Mrs. Smith tended to show that the meals furnished by the appellants were meager and most often consisted of sandwiches and that her quarters were rarely cleaned nor was the bed linen often changed.

It is undisputed that when Mrs. Smith first moved into the garage room there were no screens in the windows and swarms of flies were in the room and of great annoyance to Mrs. Smith and to her visitors.

The record further shows that in her new garage room quarters Mrs. Smith could not leave without assistance, and that she was never taken into the main part of the house. The record further shows that shortly prior to bringing this proceeding below, Mrs. Smith had brought a habeas corpus proceeding to free herself from her alleged imprisonment in the garage room.

On the other hand it is the contention of the appellants that Mrs. Smith was well taken care of and satisfied with her situation until influenced by relatives of both herself and the appellants. This influence was exercised upon Mrs. Smith, according to the appellants, because these interfering relatives were upset over the prospect of the appellants acquiring the title to the old house site which being near the business section of Albertville had greatly increased in value.

In the above recitation we have not set out all the evidence introduced below, but think it suffices to say that the evidence introduced by the complainant tends to show neglect of the welfare of Mrs. Smith by the respondents which neglect increased with the passing years. On the other hand the evidence presented by the respondents tends to show that because of Mrs. Smith's disagreeable personality and her personal uncleanliness, the obligation which they had assumed to care for her was thereby turned into a terrific burden. The attitude of the respondents, we think, is very well reflected in their testimony to the effect that while they were confronted with a terrific burden, they were people of their word, and did carry out their obligation under their agreement to support and care for Mrs. Smith.

All in all the evidence in this regard presents contradictions solely within the province of the chancellor to resolve.

Actually, the principal and most material point argued by the respective parties on this appeal relates to the allowance of $3,500 awarded to the appellants for their services in caring for Mrs. Smith, and certain minor improvements made by the appellants upon the old Smith home prior to moving therefrom.

It is the contention of the appellants that the situation on its face shows that this award was inadequate in that they had the

burden of caring for and supporting Mrs. Smith from 1951 until shortly before the institution of these proceedings in 1962, or some eleven years.

On the other hand the court found "that considering the nature of the services, the increasing neglect and isolation of the complainant, the expenditures by the respondents for and on behalf of the complainant, the respondents' use of the house, rent free, for a long period of time, and all other pertinent matters, the court is reasonably satisfied that the respondents are entitled to the sum of $3,500."

Under cross assignment of error, the appellee contends that the trial court erred in awarding the appellants any compensation in that the neglect of Mrs. Smith by the appellants constituted a complete default of their agreement and the appellants have come into equity with unclean hands.

The rule of our cases is that where a grantor rescinds a deed of which a material part of a consideration is support and maintenance, the grantee having complied with the terms of the conveyance may be compensated for reasonable expenditures in services performed, and for the value of reasonable permanent improvements made to the property by the grantee, which in equity and good conscience appear to be just. Hipp v. McMurry, 263 Ala. 11, 81 So.2d 531; Maples v. Corder, 263 Ala. 568, 83 So.2d 306, and cases therein cited. The standard "which in equity and good conscience appears to be just" is indeed a vague standard and leaves much to the discretion of the chancellor.

The decision to be made by the chancellor was not an easy one. We do not agree with the argument of appellee's attorney that the chancellor found there was a complete default on the part of the McBrayers in carrying out their duties to support and maintain Mrs. Smith, because he found that there was "an increasing neglect and isolation of the complainant." We do not agree with appellee's counsel that this finding soils the appellants' hands as a matter of law. On the other hand the McBrayers did have the burden of caring for Mrs. Smith for some eleven years. At best this must have been a continuing and heavy burden. The chancellor found that they were entitled to $3,500 for these services.

While Mrs. Smith's testimony was before the Register, there was also testimony from a number of other witnesses before the court creating reasonable inferences as to the material question of the nature of the services or the lack thereof, rendered by the appellants to Mrs. Smith.

Where a decree is rendered on evidence taken ore tenus, or partly so, and the trial court has the advantage of seeing and hearing the witnesses, this court will not disturb his conclusion unless it is plainly and palpably contrary to the weight of the evidence. The chancellor saw and heard witnesses on the material question of the nature of the services rendered and could observe their demeanor on the stand. We are in no position to say his conclusion was plainly erroneous. Thompson v. Collier, 170 Ala. 469, 54 So. 493; Hackett v. Cash, 196 Ala. 403, 72 So. 52; Autrey v. Latta, 234 Ala. 662, 176 So. 457.

Counsel for appellants, under an appropriate assignment of error, also argues that the court below erred in taxing the appellants with all costs other than the costs of appellee's witnesses.

In equity the matter of costs rests largely in the discretion of the chancellor. Equity Rule 112; Thompson v. Bryant, 251 Ala. 566, 38 So.2d 590; Rogers v. City of Mobile, 277 Ala. 261, 169 So.2d 282.

On the record before us we find no basis for disturbing the chancellor's taxation of costs in this case.

Affirmed.

LIVINGSTON, C. J., and SIMPSON and MERRILL, JJ., concur.