181 So.2d 885

**Herman W. SIMON**

v.

**Robert L. SNYDER.**

**3 Div. 164.**

Supreme Court of Alabama.

Jan. 6, 1966.

fronted 77 feet along the west side of South Decatur Street.

b. That respondent's property adjoined complainant's property on the north.

c. A dispute had arisen regarding the boundary line, and respondent was encroaching on complainant's property.

d. A court decision was necessary to establish the line.

e. The north line of complainant's property, as described in the complaint, was the true boundary line.

In his answer, the respondent admitted paragraphs a and b in the complaint, and denied paragraphs c, d, and e, and prayed that the bill be dismissed, or that the court do equity.

After hearing, the court entered a decree that the respondent is entitled to the ownership of the property described in a warranty deed from T. L. Boothe and wife, recorded in Deed Book 411, at page 341, in the office of the Judge of Probate of Montgomery County, Alabama, and that said property fronts 77 feet on South Decatur Street and terminates on the south at the chain link fence and building line of the complainant Simon.

The court based its decree upon the occupancy of the lot by the respondent, Snyder, or his grantor, T. L. Boothe, for more than twenty-five years.

Counsel for appellant argues that by admitting the allegations of paragraph a of the bill, supra, the respondent was required to set out in his answer the defense of adverse possession, and could not take advantage of such a defense merely by a general denial.

The only real issue before the court was the location of the north boundary line of Simon's property, which would be the south boundary line of Snyder's property.

---

Capell, Howard, Knabe & Cobbs, Montgomery, for appellant.

Howard C. Alexander, Montgomery, for appellee.

HARWOOD, Justice.

This is an appeal from a decree entered in a boundary line dispute between two coterminous owners.

The two lots front on the west side of South Decatur Street in Montgomery.

Herman W. Simon filed a bill against Robert L. Snyder which as amended set forth:

a. The complainant was the owner of certain described property which

In ejectment suits, which are of course at law, adverse possession may be shown as a defense under a plea of the general issue   Lay's Ex'r v. Lawson's Adm'r, 23 Ala. 377; Ellis v. Drake, 203 Ala. 457, 83 So. 281.

The defense of adverse possession and prescription is available as a defense in a suit in equity to settle a disputed boundary line.   Barbaree v. Flowers, 239 Ala. 510, 196 So. 111; Branyon v. Kirk, 238 Ala. 321, 191 So. 345, and cases cited therein.

Section 3, Title 47, Code of Alabama 1940, relating to suits to determine boundary lines between adjoining landowners provides among other things:

"The court shall determine any adverse claims in respect to any portion of the land involved which it may be necessary to determine for a complete settlement of the boundary lines * * *."

In his answer the respondent denied the averment in the bill that the north line of complainant's property as described in the complaint was the true boundary line.

This general denial put in issue the true location of the north boundary line, Rushton v. McLaughlin, 213 Ala. 380, 104 So. 824, which the complainant Simon had himself prayed the court to establish.

Since under the doctrine of our cases a defendant in an action at law may defend on adverse possession or prescription under a plea of the general issue, we know of no rule requiring a respondent in a suit in equity to plead the defense of limitations to enable him to establish such defense.  See Keppel v. Dreier, 187 Ill. 298, 58 N.E. 386.

We hold that the court properly allowed the respondent to establish his claim of ownership by prescription under his general denial that the north boundary line of complainant's property was as described in the complaint.

The land in dispute consists of an elongated triangle fronting some several feet on the west side of South Decatur Street and running back to a common boundary point at the rear of the lots of these two litigants.

The complainant rests his claim on documentary title, beginning with an affidavit of open, notorious, hostile, and adverse possession filed by Terry T. Greil in the office of the Probate Judge of Montgomery County, Alabama, pursuant to Section 116, Title 47, Code of Alabama 1940.

In 1930, Greil and wife conveyed a certain lot to Julius S. Rice, and Rice and wife conveyed the property to Loraine Rice Oppenheimer.

Loraine Rice Oppenheimer conveyed the property to Mary D. Carr, who in turn conveyed the property to Simon in 1946.

It is to be noted that in the Oppenheimer deed to Carr and the deed from Carr to Simon, the title to only the south fifty feet of the property is warranted, and the north 27 feet of the property, in which lies the disputed triangle is quit claimed only.

After acquiring the property Simon erected a store building on the property, the north side of which was built on the north line of the warranted property.  This store building burned and Simon erected a brick store building, again placing the north side of the store building along the north line of the warranted portion of his lot.  From this second store building, which was set back from the street to allow for parking, a chain link fence was erected, extending toward the street, and at the rear of the store Simon erected a chain link fence from the building to the common boundary corner in the rear.

The respondent Snyder introduced in evidence the deposition of Mr. T. L. Boothe, his grantor.

Mr. Boothe's testimony was to the effect that he purchased the lot which he later sold to Snyder in 1926 or 1927. There was a cotton crop on it at the time and he went into possession of the lot the next year. At the time he purchased the lot he had it surveyed, and continuously paid taxes on it thereafter. He continuously used the lot thereafter, and built two houses on it, one near Decatur Street and the other on the rear part of the lot. On the south edge of his property there was a lane used by the tenants of his houses, and also by other houses further to the rear of his lot.

Sometime in the thirties he permitted Mr. Fields to erect a sign advertising a laundry on his lot. (Other evidence shows this sign was erected at the south edge of Boothe's lot, within inches of the north line of Simon's warranted property.)

Mr. Simon erected a fence between his and Boothe's lot, and "he put it on the line, there, I think, it looked like it was about the line where they run it * * *."

At no time while he was in possession of the lot did anyone complain about his occupancy of the lot, or about the sign erected on his lot.

J. A. Fields testified that he was formerly in the cleaning and laundry business, and in the thirties he made arrangements with Mr. Boothe to erect a sign advertising his business. Mr. Boothe showed him where he could place the sign. Mr. Boothe did not charge him any rent on the sign after he erected it.

In 1956, Mr. Boothe sold the lot to Snyder.

Mr. Snyder testified that since purchasing the lot from Mr. Boothe he has been in possession thereof, in that his tenants have used the lot right up to the Simon building and fence. Further, he made arrangements with the Capitol Advertising Company for the erection of a signboard to replace the one erected by Fields. While Fields paid him no rent for his sign, Capitol has paid him $100 per year rent on the sign they erected.

Mr. Snyder further testified that since he has been in possession of the lot there has been no evidence by word or by act on Simon's part that he was claiming any land north of his brick store building, or the fence line extending east and west from the store.

Photographs of the property, particularly of the area of the disputed boundary line, were received in evidence. These graphically show the brick store building with the chain link fence extending east and west. It shows the large billboard erected by Capitol Advertising Company, only a few inches north of the fence and building. A driveway from the street runs west as close to the signboard, store, and fence, as feasible. The only conclusion that can be drawn is that this driveway is used by the tenants of the houses on Snyder's property.

While Mr. Boothe's testimony was by deposition, two surveyors, Mr. Fields, the appellant and appellee, and other witnesses testified in person before the court.

Mr. Simon testified that he had exercised acts of dominion on the land north of his fence, his testimony in this regard being:

"Over on this side here is a wash, mulberry trees were growing there, bottles had broken, etc. When we graded this property to build we filled in a big part of it where this stuff is here. And it was a regular water course."

As to the fence which Mr. Simon erected, he testified:

"Q. And you don't know whether it was on the line or not?

"A. No, sir. I don't know anything about it. Mr. Boothe never objected to it being on the line. *I con-*

*sidered it on my line."* (Emphasis ours.)

"Q. You considered the fence on your line?

"A. Oh, no. I considered it was my property where it went, not my line."

The above testimony is of little probative value to show acts of possession. Even credulity is taxed if the conclusion be reached that, had Mr. Simon believed that he had valid title to the disputed triangle, he would twice have erected store buildings and a fence south of the boundary line he now claims.

■ Where a decree is rendered on evidence taken ore tenus, or partly so, and the trial court has the advantage of seeing and hearing the witnesses, this court will not disturb his conclusion unless it is plainly and palpably contrary to the weight of the evidence. McBrayer v. Smith, 278 Ala. 247, 177 So.2d 571, and cases cited therein.

■ After a study of this record, we conclude there was ample evidence to support the conclusion of the chancellor that the appellee, Snyder, and his grantor, Boothe, had been in open, notorious, adverse, and hostile possession of the lot bounded on the south by the store building and fence erected by Simon, and that Snyder had acquired title to the lot so possessed under our doctrine of prescription. Certainly there is no basis on which we could justifiably say that the conclusions of the chancellor were plainly and palpably contrary to the weight of the evidence.

The decree of the lower court is due to be affirmed and it is so ordered.

Affirmed.

LIVINGSTON, C. J., and SIMPSON and MERRILL, JJ., concur.