66 So.2d 708

**HADEN et al. v. BOYKIN et al.**

I Div. 528.

Supreme Court of Alabama.

June 18, 1953.

Rehearing Denied Aug. 11, 1953.

Caffey, Gallalee & Caffey, Mobile, for appellants.

Gaillard & Gaillard, Mobile, for appellees.

MERRILL, Justice.

Mrs. Dora E. Haden, Lionel Earl Haden and Mrs. Olive Peterson, the widow and children, respectively, of E. W. Haden, deceased, filed their amended bill of complaint against Frank W. Boykin, Washington Lumber and Turpentine Company and Washington Land and Cotton Corporation for an accounting of all proceeds received and disbursed by them as a result of a joint adventure agreed to and engaged in by E. W. Haden and Frank W. Boykin, and praying that the account be stated in favor of complainants in the sum of $20,768.19 with interest. This appeal is from a decree of the Circuit Court, in Equity, of Mobile County dismissing the bill.

The foundation of complainants' action is a written agreement between E. W. Haden and Frank W. Boykin dated May 7, 1938 outlining certain of their hopes and plans and providing for an adjustment of the first profits, if any, of approximately $21,000 in favor of Haden. Respondents claimed the agreement became "null and inoperative," that complainants have been "guilty of gross laches" and that there has been an accord and satisfaction.

The record in this case covers eight hundred and fifty pages. The briefs of counsel are unique. Appellants' brief covers one hundred and twenty-nine typewritten pages, only seventeen of which are devoted to propositions of law and discussion of cited cases. The remainder of this very excellent brief states and argues the facts in a clear, connected and thorough manner. The appellees' brief is certainly unusual. It covers ninety-one printed pages, cites no cases, and, as we recall, mentions only three authorities, Bouvier's Law Dictionary, Martindale's Digest and Genesis 23:17. The writer of the brief has a remarkable gift of expression and a flair for the dramatic and has furnished us with one of the most readable documents it has been our pleasure to peruse.

We mention the length of the record and the briefs to demonstrate that the problem in this case is largely factual, and the attorneys have argued the facts and the evidence at length and with exceptional ability.

The record in this case tells the absorbing story of the efforts of Messrs. Boykin and Haden to get title to some 92,000 acres of timber lands in Washington and Mobile Counties, which were mortgaged to English bondholders for $368,900, their maneuverings to get the bondholders to sell their bonds for $50,000, and when that had been agreed to, their frantic schemes to raise the $50,000 with one failure after another, with many plans, approaches and agreements, until finally the deal was completed. Testifying as to their difficulty in getting the money, Mr. Boykin said, "We couldn't get it. Neither of us. We both tried every way we knew how, and tried everybody we knew. The panic was on and they turned us down cold, E. W. Haden and me." The hundreds of letters, telegrams and various documents included in the record tell a story of struggle, human interest and ultimately financial success with the profits

divided equally between Mr. Boykin and Mr. Haden and his heirs.

The trial court made the following finding of fact:

"(a) The United States Lumber and Cotton Corporation acquired a large tract of land (about 92,000 acres) and in 1910 mortgaged this to secure bonds.

"(b) Washington Lumber & Turpentine Company acquired the timber thereon and dealt with successive presidents of the corporation for many years until E. W. Haden became the president, about 1934, upon the death of Mr. Rutherford, his predecessor.

"(c) Thereafter, E. W. Haden sold many thousand acres for the company, reserving the mineral rights. Such sales were subject to the timber right of Washington Lumber & Turpentine Company.

"(d) Boykin and Haden made many plans to acquire the lands and mineral rights either through purchase of bonds or stocks and Haden was sent to England twice for this purpose, but all plans failed until on May 7, 1938, the agreement which is the basis of this suit was entered upon.

"(e) This agreement was not carried out.

"(f) In October of 1938 the American National Bank & Trust Company agreed to lend money to Washington Lumber & Turpentine Company. The amount of the loan was to be $50,000.00 for the purchase of the bonds and approximately $22,000.00 on the old debt. Both of those notes were to be secured by the bonds to be purchased in the name of the company. The bank required other collateral, including the agreement of the United States Lumber & Cotton Company to sell all of its unsold lands to Washington Lumber & Turpentine Company. The bank also required transfer and pledge of all of the timber rights of Washington Lumber & Turpentine Company, the pledge of the proceeds of a sale of the pulpwood to T. J. Rester for approximately $7800.00 and the transfer of contracts of sale covering the lands and timber and the agreement on the part of Washington Lumber & Turpentine Company to pay to the bank the proceeds of all sales of land and all sales of timber, including the proceeds of the Rester contract. The bank required the endorsement of Frank W. Boykin, which was given, and endeavored to obtain the endorsement of E. W. Haden, who refused to endorse the note.

"(g) An offer to purchase the bonds was made by the Washington Lumber & Turpentine Company as the debtor, which offer was dated October 18, 1938 (Document 21, Exhibit 9).

"(h) E. W. Haden and Frank W. Boykin thereafter organized a corporation called Washington Land & Cotton Corporation, each owning one-half of the stock therein and according to the allegations of the bill, the complainants declare the purpose of the incorporation to be as follows:

" 'The Washington Land & Cotton Corporation has been organized for the purpose of acquiring the title to all of the unsold land and all of the unsold oil, gas and mineral rights and all other notes and contracts for sale, or purchase money liens held as collateral security to the note of Washington Lumber & Turpentine Company. The timber rights are held by the Washington Lumber & Turpentine Company.'

"(i) The Washington Lumber & Turpentine Company was the owner of the bonds and the bonds were pledged to the bank, and the deed of trust securing the bonds was foreclosed in a suit filed by the American National Bank & Trust Company and Washington Lumber & Turpentine Company.

"At the foreclosure sale the American National Bank and Trust Company bought all the property, contracts and other pledged collateral and a vendor's lien deed was executed to the bank to secure the balance of $30,000.00 still due on its loans. Under this deed the bank conveyed to Washington Lumber & Turpentine Company all of the timber rights and conveyed the unsold lands and the oil, gas and mineral rights, contracts and other collateral to the Washington Land & Cotton Corporation.

"(j) All of the lands, exclusive of the timber rights owned by Washington Lumber & Turpentine Company, and exclusive of the oil, gas and mineral rights reserved

by the Washington Land & Cotton Corporation, were sold to T. J. Rester and the proceeds were divided equally between E. W. Haden and Frank W. Boykin. At this time there was no demand for any right to the money claimed in this suit.

"(k) In the creation of the Washington Land & Cotton Corporation, there was no demand by Haden for any amount other than one-half of the assets.

"(l) After the death of E. W. Haden, a meeting was held in Washington on May 10, 1944, and a declaration was made by Frank W. Boykin and all of the heirs of E. W. Haden that each group owned an undivided one-half interest and no claim was made for any excess sums.

"(m) On August 1, 1949, all of the Haden heirs and Frank W. Boykin divided all of the assets of Washington Land & Cotton Corporation by a warranty conveyance in which the equality of ownership was affirmed and in which no claim was made by the heirs of Edward W. Haden."

It was undisputed that Mr. Haden was president of the Washington Land and Cotton Corporation while he lived, and his wife Dora E. Haden was president after his death in 1942. They signed every check for the division of the profits. Mr. Haden signed checks dividing $18,000 equally a few days before his death and Mrs. Haden signed checks dividing over $170,000 equally, and there was no evidence of any claim of the $21,000 in dispute during those divisions from 1941 to 1949. This is very persuasive of the invalidity of the claim and is background for the trial court's findings in (j), (k), (l) and (m) above.

▆▆▆ Appellants insist upon the application of the rule that where the evidence on a given issue is not in substantial conflict, there is no presumption in favor of the finding and decree of the court on that issue, though some or all the evidence is taken before the trial judge, as enunciated in State v. Mobile Stove & Pulley Mfg. Co., 255 Ala. 617, 52 So.2d 693, and the cases cited therein. But we consider that there was sufficient conflict in the evidence to invoke the rule that where the testimony

was *ore tenus*, or partly so, the trial court's conclusion on the facts will not be here disturbed, unless palpably and plainly wrong. Meadows v. Hulsey, 246 Ala. 261, 20 So.2d 526; Aiken v. Barnes, 247 Ala. 657, 25 So.2d 849; Gardiner v. Willis, 258 Ala. Sup. 647, 64 So.2d 609.

It would serve no useful purpose to further detail the evidence. Suffice it to say, we have carefully examined and considered the same, and are not willing to say that the decree of the trial judge is erroneous. It follows that the decree of the trial court is due to be, and is, affirmed.

Affirmed.

LIVINGSTON, C. J., and LAWSON and STAKELY, JJ., concur.