119 So.2d 203

**Annie Boothe JONES et al.**

v.

**Coral G. BOOTHE, Ex'x.**

**3 Div. 886.**

Supreme Court of Alabama.

March 24, 1960.

Cameron & Cameron, Montgomery, for appellants.

**422**

Ramon L. Farnell, Montgomery, for appellee.

MERRILL, Justice.

This appeal is from a decree setting aside and canceling a deed executed by parents to their daughter. The father, J. T. Boothe, died on September 5, 1954, some 45 days after the execution of the deed. The mother, appellee, filed this suit on December 9, 1958. Respondents were the daughter, Annie Boothe Jones, and her son, Allan B. Jones, and his wife, Mary Jo Jones.

Appellee avers in her bill that J. T. Boothe was induced to execute the deed as a result of fraud, misrepresentations and undue influence on the part of Annie B. Jones and Allan Jones, and that she also signed the deed as a result of undue influence on their part. The deed in question conveys 4 acres, which included the home of the grantors, and was part of the 29 acre tract owned by them.

It is further averred that Annie B. Jones and her husband conveyed to their son, Allan Jones, and his wife a portion of the four acres, consisting of a lot 100 feet by 200 feet; that the Allan Jones were not innocent purchasers for value because Allan Jones was a party to the fraudulent conveyance; and that both deeds were without consideration.

Demurrers were overruled and appellant, Annie B. Jones, filed a cross-bill alleging that appellee had lived in her home from September 5, 1954, to April, 1957, without charge, and she asked that in the event the deed be set aside she should be entitled to a reasonable amount for room and board while appellee was in her home.

Appellants Allan Jones and Mary Jo Jones prayed in their cross-bill that in the event their deed should be set aside that they should be entitled to a reasonable amount for the cost of construction on the lot they purchased from Annie B. Jones.

The cause was tried before the trial judge and the decree set aside the deed to Annie B. Jones, and denied the relief sought by respondents in their cross-bills. It was stipulated that appellee was not rely-

ing on Tit. 20, § 15, Code 1940, to set aside the deed, but was relying on a promise to support and a failure thereof as an element of fraud and undue influence.

We list some principles which are applicable.

The question of undue influence depends upon the facts and circumstances of each particular case. It is a species of constructive fraud, difficult of proof, with much latitude allowed in the testimony. Tipton v. Tipton, 249 Ala. 537, 32 So.2d 32.

The relationship of parent and child is confidential. Tipton v. Tipton, supra; Milliner v. Grant, 253 Ala. 475, 45 So.2d 314.

In transactions *inter vivos,* where the parties stand in confidential relations, and the grantee, who is the beneficiary, is the dominant spirit in the transaction, the law raises a presumption of undue influence and casts upon the opposite party the burden of repelling such presumption by satisfactory evidence whenever the transaction is assailed. Dillard v. Hovater, 254 Ala. 616, 49 So.2d 151; Floyd v. Green, 238 Ala. 42, 188 So. 867.

It is obvious, though not so stated by the trial court, that the daughter, appellant, was found by that court to have been the dominant party in the transaction. Therefore, the confidential relation existing, and the appellant being the dominant spirit, the burden was upon her to show the transaction was fair, just and equitable in every respect. Tipton v. Tipton, supra.

There was much testimony, but since it mostly presents a question of fact, we detail only so much of it as to show that it supported the decree.

J. T. Boothe was 87 years of age and his wife 77 when the deed was executed in 1954. They had lived on the place near Naftel for more than 30 years. Their seven children had grown to adulthood, one had died leaving a child, and the other six had homes of their own.

The tendencies of the evidence show that for a few weeks prior to his death, J. T. Boothe was in poor mental and physical condition, he could not look after himself, spent most of his time in bed, did not always recognize his children, grandchildren or an adjoining neigbhor he had known all his life. On July 4, 1954, there was a large gathering of relatives and friends at his home and a religious service was held under the trees as part of a reunion. Appellant spent most of that afternoon in private conversation with her father and inquired of one of her brothers the cost of putting asbestos siding on the homeplace since the brother was in the building supply business. This was unusual conduct on her part. She visited her father the following Sunday, and the next Sunday, July 18, appellant and her son Allan visited J. T. Boothe, and Allan, who had been trying to buy the homeplace and thought he had succeeded, learned that his grandmother, appellee, had talked J. T. Boothe out of the transaction. Appellants knew that J. T. Boothe had previously made a will, in which he left everything he owned at the time of his death to his widow.

On the following Thursday, July 22, Annie B. Jones, Allan Jones and an attorney from Montgomery came in Allan's automobile to the Boothe home bringing blank deeds. The Jones had "taken off" from their jobs to make the trip. The blank spaces in the deed form were filled out in longhand by the attorney, whose services were paid for by Annie B. Jones. Appellee was told by Annie B. Jones that she would have to sign but she would give appellee a home as long as she had one. Other children knew nothing of the transaction until after it took place, and some not until after the death of their father, which occurred six weeks after the execution of the deed. It is undisputed that appellants paid no consideration for the deed.

The deed was recorded the day after it was signed. After the death of J. T.

Boothe, appellee went to live with Annie B. Jones for about two years, when she was asked to leave. Appellee asked that the homeplace be deeded back to her but this request was refused. Shortly thereafter, Allan Jones began erecting a one-room cabin of used lumber on the lot he secured from his mother. Appellee was ordered by him to "get off and stay off and to never come back." A short time later, appellee filed her bill in this cause.

While much of the foregoing was denied by appellants, we rest content with this general reference to the proof as has been done in similar cases. Worsham v. Johnson, 231 Ala. 265, 164 So. 381.

■ All of the evidence was heard orally by the trial court. When such is the case, that court's finding has the effect of a jury's verdict and will not be disturbed on appeal unless plainly erroneous or manifestly wrong. Lamar v. Lamar, 263 Ala. 391, 82 So.2d 558; Haden v. Boykin, 259 Ala. 504, 66 So.2d 708. We, therefore, hold that the trial court did not err in ordering the deed to Annie B. Jones set aside. This disposes of assignments of error 1 through 6, 14 and 16 through 22.

Appellants next urge that appellee should not recover because she was guilty of laches in bringing her suit.

■ Each case where the question of laches is raised must rest upon its own peculiar facts and circumstances. Mere delay in the assertion of a right, without more, does not in itself constitute laches, though long delay is strong evidence of acquiescence. Shepherd v. Kendrick, 236 Ala. 289, 181 So. 782; Woods v. Sanders, 247 Ala. 492, 25 So.2d 141.

■ Appellee filed her suit in December, 1958, approximately four and one-half years after the execution of the deed and one and one-half years after she was forced to move from appellant, Annie B. Jones', home. Here the original transaction had not become so obscure by lapse of time or loss of evidence as to make it difficult or hazardous to do justice. We do not think appellee was guilty of laches to the extent that she would be barred from the relief sought.

■ It is next urged that the court erred in failing to require appellee to reimburse Allan Jones and wife for the improvements they made on their lot. In view of the active participation of Allan Jones in securing the execution of the deed, his admitted desire of long standing to own the land, and the fact that the improvements consisted of a one-room cabin erected out of used lumber, we cannot say that the trial court, after hearing the evidence ore tenus, was plainly wrong in refusing the relief of reimbursement under the cross-bill of Allan Jones and wife.

Lastly, it is argued that "the appellee's bill was demurrable for a failure to offer to do equity."

■ Ordinarily, a bill insofar as it seeks to cancel a deed is demurrable for complainant's failure to offer to do equity. Penney v. Odom, 260 Ala. 563, 71 So.2d 881; Shamblee v. Wilson, 233 Ala. 164, 170 So. 769. This is the rule because when a bill shows that the complainant, or the person in whose shoes he stands, received a valuable consideration for the execution of the deed, it must offer to do equity by restoring what has been received. Baggett Mercantile Co. v. Vickery, 213 Ala. 427, 105 So. 207.

But a failure in the bill to offer to make restitution does not render it subject to demurrer unless it shows that the mortgagee or the vendee advanced something of value as consideration for the conveyance. Sumners v. Jordan, 220 Ala. 402, 125 So. 642; Worsham v. Johnson, 231 Ala. 265, 164 So. 381. From the averments of the bill in the instant case, no matter of restoration was involved. And, while not applicable to the question on demurrer, the appellants admitted that no consideration was paid.

The situation in the instant case is analogous to that where the bill seeks to cancel a deed, for which a material part of the consideration is grantee's promise to support grantor, and we have held that in such cases the bill is not demurrable for want of an offer to do equity. Hipp v. McMurry, 263 Ala. 11, 81 So.2d 531; Cornelius v. Walker, 248 Ala. 154, 27 So.2d 17; Clyburn v. Toney, 245 Ala. 341, 17 So.2d 235; Heartsill v. Thompson, 245 Ala. 215, 16 So.2d 507.

There being no error to reverse, the decree is affirmed.

Affirmed.

LAWSON, STAKELY and COLEMAN, JJ., concur.