235 So.2d 878

Houston WOLFE, Mary T. White,
Sadie L. Thompson

v.

C. Lenoir THOMPSON II, a/k/a
Charles Lenoir·Thompson II.

1 Div. 612.

Supreme Court of Alabama.

May 28, 1970.

Wilters & Brantley, Bay Minette, for appellants.

**746**

Chason, Stone & Chason, Bay Minette, for appellee.

HARWOOD, Justice.

The setting of this case is a family dispute mainly between Mary Thompson White Richerson, and C. Lenoir Thompson and C. Lenoir Thompson II. Mrs. Richerson is a daughter of Sadie L. Thompson and the two Lenoir Thompsons are respectively her son and grandson.

Mary Thompson White Richerson, Sadie L. Thompson and Houston Wolfe filed a bill alleging that the land involved in this suit was formerly owned by Sadie L. Thompson, who had on 2 November 1964 leased the land to her daughter Mary Thompson White Richerson and Houston Wolfe for a period of ten years, at an annual rental of $700.00 per annum, payable at $100.00 on the beginning of each year, and $50.00 per month on the 16th of each month following.

The lessees agreed to erect certain fences, cultivate, prune, and fertilize a peach orchard on the land, and to keep up the cotton acreage.

The bill further averred that on 17 November 1965, Sadie L. Thompson executed a warranty deed conveying the land to herself and to her daughter Mary Thompson White Richerson jointly, with right of survivorship. This deed was recorded 4 April 1966. The consideration for this deed was $10.00 and other good and valuable consideration. Mrs. Thompson was 85 years old at the time of the execution of the deed.

It was further averred that on 1 August 1966, Sadie L. Thompson executed a warranty deed to the land in question to C. Lenoir Thompson II, reserving the mineral rights to herself, the grantee agreeing to assume a mortgage on the land.

The complainant Sadie L. Thompson averred that the deed of 1 August 1966 was obtained by fraud practiced on her by C. Lenoir Thompson II.

The bill prayed that on final hearing the court enter a decree declaring, (1) that the lease of 2 November 1964 is a subsisting lease and that the lessees thereunder have a right of possession of the land in accordance with the terms of the lease, (2) that Sadie L. Thompson and Mary Thompson White Richerson jointly own the land with right of survivorship, and (3) that the deed to C. Lenoir Thompson II was obtained by fraud, and that the same be set aside.

The respondent filed a demurrer to the bill, and an answer and cross-bill. No ruling on the demurrer appears in the record.

The answer and cross-bill denied the charging allegations in the bill, and averred that the lessees of the land, Mary

Thompson White Richerson and Houston Wolfe had breached the lease by failing to prune and cultivate the peach orchard, and permitting waste on the property, and by failing to pay rent.

The cross-bill further averred that the deed on 17 November 1965 by which Sadie L. Thompson conveyed the land to herself and Mary Thompson White Richerson jointly with right of survivorship, was procured by Mary Thompson White Richerson by undue influence exercised over the grantor by Mrs. Richerson. The manner and method by which such undue influence was exercised is set out in various details.

The cross-bill prayed (1) that the lease of 2 November 1964 be declared no longer in effect because of its breach by the lessees, (2) that the deed of 17 November 1966 wherein the land was conveyed by Sadie L. Thompson to herself and Mrs. Richerson be declared void as procured by undue influence, and (3) that the respondent C. Lenoir Thompson II is the owner of the land by virtue of and under the terms of the deed of 1 August 1966.

After a lengthy hearing the court ordered, decreed, and adjudged:

1. That the lease from Sadie L. Thompson to Mrs. Richerson and Houston Wolfe is no longer in effect because of the breach thereof by the lessees.

2. That the deed of 17 November 1965 from Sadie L. Thompson to herself and Mrs. Richerson jointly with right of survivorship, was void on account of undue influence exercised over the grantor by the grantee Mrs. Richerson.

3. That the deed from Sadie L. Thompson to C. Lenoir Thompson II was a valid instrument having been executed by the grantor after consultation with counsel and was the result of a free and voluntary act on the part of the grantor; and that C. Lenoir Thompson II is the owner of the land described in the deed.

The evidence presented below by the respective parties is in irreconcilable conflict.

That presented by the complainants-appellants on this appeal was directed toward showing that in 1957, Mrs. Richerson left her job with the State Highway Department and returned to live with her mother and father in Perdido. Her mother was 75 years of age at the time and her father was in his eighties. She had been admitted to practice of law in Alabama and at first occupied an office in the law office of her brother C. Lenoir Thompson in Bay Minette. Later after friction developed between her and her brother, she opened a law office in Atmore. The elder Thompson lived in quarters in a restaurant conducted in connection with a small motel operation.

Later Mrs. Richerson's daughter, son-in-law, and their three children came to live there.

It was Mrs. Richerson's testimony that after coming to live with her parents she contributed to their support and looked after them generally. She had drawn the deed whereby the land was conveyed to herself and Mrs. Sadie L. Thompson jointly at her mother's request, her mother stating she had done enough for Lenoir and his family, and Lenoir had probated an earlier will of her sister's when a later will was in existence.

She testified that she had furnished maids to look after her parents, and their living quarters had been suitable and well cared for. She had at no time mistreated her mother or in anywise used undue influence over her.

Several witnesses were introduced by the complainants relative to the condition of the quarters in which the elder Thompsons lived. The tendency of this testimony was that the quarters were suitable.

The elder Thompsons had an income of around $1300 per year, plus some additional money from oil leases and timber sales.

The evidence presented by the respondents was to the effect that when Mrs. Richerson occupied the office in Lenoir Thompson's law office, he paid all of the expenses of maintaining the office. The disagreements between them originated in protests by Mr. Thompson of the squalor and filth in which the elder Thompsons were maintained. Lenoir and Lenoir II testified as to being ordered away by Mrs. Richerson when attempting to visit the elder Mrs. Thompson, sometimes at gun point. Lenoir Thompson testified as to his financial aid to the elder Thompsons, and to the conditions in which they were kept by Mrs. Richerson.

In March 1966, Lenoir went to his mother's quarters to have the place cleaned up. Pictures of the condition of the living quarters prior to being cleaned were taken at this time. These pictures were received in evidence. They depict the unkempt, filthy condition of the quarters.

In late 1966, a house was built apparently near the motel site. According to Mrs. Richerson she contributed substantially to the building of this house. According to the testimony of Lenoir the house was built largely through his efforts. At any rate, Mrs. Richerson and her parents moved into this house though Mr. Thompson was placed in what is described as a small shack in the rear. Mr. Thompson occupied these quarters until his death in 1960. Her daughter, son-in-law and their children remained in a cottage at the tourist court though they ate at the house.

, Evidence was presented by the respondents tending to show physical cruelty toward Mrs. Thompson by the complainant, and that Mrs. Thompson stood in fear of the complainant.

There is undisputed evidence that Mrs. Thompson through the years harbored a fear of being placed in a nursing home. Mrs. Richerson testified as to this fear and that she had told her mother she would not be placed in a nursing home. Mrs. Richerson was unsure whether this promise was made at or about the time of the execution of the deed of 17 November 1965.

As to the deed by which Mrs. Sadie L. Thompson conveyed the land to Lenoir II, his father, Lenoir testified that his mother had requested him to draw up a deed conveying the land to Lenoir II. His mother stated she wanted Mrs. Richerson to have the home, and she wanted to convey the land in question to Lenoir II. He drew up four deeds which he turned over to his mother.

Mr. J. B. Blackburn, who has been in the practice of law in Bay Minette since 1928, testified that on 1 August 1966, Mrs. Sadie L. Thompson, accompanied by Lenoir II, came to his office with a deed which she wished to execute. The terms of the deed were discussed at length between him and Mrs. Thompson. At one point Mrs. Thompson stated that if anything happened to Lenoir II before she died, she wanted the land back. Mr. Blackburn suggested that Lenoir II execute a will devising the land to Mrs. Thompson. This was agreeable to Lenoir II, though he wanted the will to devise his property additional to the land to other parties. The will was prepared and executed in Mr. Blackburn's office, and the deed was signed and notarized there. This was the first and only time Mr. Blackburn had performed any legal services for either Mrs. Thompson, or for Lenoir II.

Mrs. Blackburn who serves as Mr. Blackburn's secretary, testified by deposition as to notarizing the deed.

The record shows that on 18 August 1967, the testimony of Mrs. Sadie L. Thompson was taken so that it might be perpetuated for use in a trial of this case. The hearing below was begun on 21 May 1969.

The attorney for the complainants made known to the court that although Mrs. Thompson was present in court she had deteriorated considerably since her testimo-

ny was taken, and he would like to use the testimony taken on 18 August 1967 rather than placing Mrs. Thompson on the stand. Mrs. Thompson had suffered a stroke in 1968. The court permitted this to be done.

Actually, it is difficult to attach much probative value to Mrs. Thompson's testimony in view of its intermixture of relevant testimony with long rambling autobiographical recollections by Mrs. Thompson on events completely disassociated from the matters at issue, and occurring long ago.

We have not attempted to detail all of the evidence presented in this rather voluminous record. There is considerably more. We have read the record carefully.

■ The conclusion is dictated that there is ample legal, material, and relevant evidence to support the conclusions and decree of the Chancellor. While the evidence is in sharp dispute, the evidence was heard ore tenus, and we find nothing that would justify our concluding that the Chancellor's conclusions were plainly and palpably wrong. His conclusions have the force and effect of a jury verdict. Cates v. Cates, 272 Ala. 615, 133 So.2d 256; Baggette v. Baggette, 279 Ala. 167, 182 So. 2d 898; Mustell v. Rose, 282 Ala. 358, 211 So.2d 489.

Counsel for appellants contend that no presumption of correctness of the decree can be indulged in this case in that the testimony of Mrs. Blackburn, and of Mrs. Thompson, was by deposition.

Mrs. Blackburn's testimony was only to the effect that she took the acknowledgment of Mrs. Thompson. This deed, with the acknowledgment was made an exhibit to the bill as a part thereof. Her testimony merely corroborated the bill in this aspect.

Mrs. Thompson's testimony, in those instances where relevant, merely tended to corroborate the testimony of several witnesses offered by the complainants.

■ Where a cause is heard ore tenus, and witnesses give testimony relating to all material issues, the fact that additional depositional evidence is presented, does not in any wise affect the rule of the presumption of correctness to be accorded the trial court's conclusions. McBrayer v. Smith, 278 Ala. 247, 177 So.2d 571; Hackett v. Cash, 196 Ala. 403, 72 So. 52; Thompson v. Collier, 170 Ala. 469, 54 So. 493.

Counsel for appellants also contend that the decree is erroneous in that a donation from a parent to a child is insufficient to raise a presumption of undue influence since the parent, in the absence of evidence to the contrary, is presumed to be the dominant party. McLeod v. McLeod, 145 Ala. 269, 40 So. 414.

■ The relationship of parent and child is confidential. Tipton v. Tipton, 249 Ala. 537, 32 So.2d 32.

■ In transactions inter vivos, where the parties stand in confidential relationship, and evidence tends to show that the beneficiary is the dominant party, the law raises a presumption of undue influence and casts upon the beneficiary the burden of repelling such presumption when the transaction is assailed. Jones v. Boothe, 270 Ala. 420, 119 So.2d 203, and authorities cited therein.

■ Implicit in the decree is the Chancellor's conclusion that Mrs. Richerson was the dominant party in the conveyance whereby Mrs. Thompson conveyed the land to herself and Mrs. Richerson jointly, with right of survivorship. The burden was therefore upon the complainants-appellants to show that the transaction was fair, just, and equitable in every respect. Tipton v. Tipton, 249 Ala. 537, 32 So.2d 32; Jones v. Boothe, supra. This they failed to do to the satisfaction of the Chancellor. There is evidence, or reasonable inferences therefrom tending to support the Chancellor in this aspect.

We have found no sufficient basis in this record to authorize a holding by us that the Chancellor erred in the decree rendered.

Affirmed.

LIVINGSTON, C. J., and LAWSON, MERRILL and MADDOX, JJ., concur.