ALMON, Justice.
Mrs. Parker, as executrix, brought suit to set aside a deed executed by her deceased uncle, Mr. Tom Dial. The circuit court heard the case on its merits and entered judgment denying the relief sought. Mrs. Parker appeals from that judgment. We affirm.
Mr. Dial owned and lived on eighty acres of land in rural Clarke County. When his wife died in 1968, he was approximately eighty-eight years old. Mrs. Parker and her sister, Mrs. Cornelius Williams, were his nieces by marriage. Mr. Dial’s only child is an illegitimate daughter, Mrs. Velma Franklin. Mr. Dial continued to live in his home alone after his wife’s death until Mrs. Parker was appointed his guardian and he was put in a nursing home in 1972, where he died in 1974. Apparently Mrs. Parker, Mrs. Williams, and Mrs. Franklin were the beneficiaries under his will, which was probated before this action was filed.
On October 9, 1970, Mr. Dial conveyed approximately one-third of his land to Mrs. Willie Mae Tate. He conveyed one parcel of approximately one acre and another of approximately twenty-six acres by separate deeds. The remaining two-thirds of his land appears to have passed under his will to the above-named beneficiaries. Mrs. Parker filed this action to have the twenty-six acre conveyance set aside. Her complaint alleged that
“at the time of the execution and delivery of said deed, that the said TOM DIAL, deceased, was ill, and infirmed from old age which made him incompetent to handle his business affairs, and he was not of sound mind, and not competent to execute a conveyance of real property under the laws of the State of Alabama, and further, that the said Willie Mae Tate and Henry Tate, Jr., exerted against the said TOM DIAL undue influence in the execution of said deed.”
Mrs. Parker raises the following issues:
“A. A conveyance of land obtained for a grossly inadequate consideration, by unfair advantage taken of great mental weakness, though not amounting to absolute incapacity of the grantor, will, in equity, be set aside, on equitable terms, when application therefor is made seasonably by the grantor, his representatives or his heirs. Floyd v. Green, 238 Ala. 42, 188 So. 867 (1939).
“B. Undue influence may exist without either coercion or fraud and may result entirely from the confidential relation on the part of the beneficiary occupying the position of dominant influence. Floyd v. Green, supra; Groover v. Darden, 259 Ala. 607, 68 So.2d 28 (1953).
“C. When a confidential relationship is shown to exist and the one who was in a position to exert the influence claims the benefits of a contract with the person bestowing confidence, then the burden is cast upon the beneficiary to show affirmatively that the influence of his position was not unduly exerted and that the utmost good faith was exercised; and that all was fair, open, voluntary, and well understood. Burke v. Taylor, 94 Ala. 530, 10 So. 129 (1891); Gray v. Gray, 246 Ala. 627, 22 So.2d 21 (1945); Jones v. Boothe, 270 Ala. 420, 119 So.2d 203 (1960); cases cited, supra, and 6 Thompson on Real Property § 2673 (1962 Replacement).
“D. The Court erred in refusing to admit into evidence two cases out of that court, which were evidence as to the competency of Tom Dial to dispose of his property prior to and simultaneously with the conveyance which is the subject matter of this suit. Tucker v. Tucker, 248 Ala. 602, 28 So.2d 637 (1946); Watson v. Anderson, 11 Ala. 43 (1847); Shipman v. Furniss, 69 Ala. 555 (1881).”
The Tates do not take issue with the principles of law and authorities cited above, but state that the only disputed issues are issues of fact and that the trial court’s judgment should not be disturbed. We agree that all the issues quoted above, except issue “D,” hinge on disputed questions of fact.
*819 Mrs. Parker introduced a considerable amount of testimonial evidence of Mr. Dial’s weakened mental condition. As the Tates point out, however, her witnesses were either interested parties or their relatives, except for Dr. Jack L. Dozier. Dr. Dozier testified that he treated Mr. Dial for heart trouble and hardening of the arteries for several years. In February 1972 he certified that Mr. Dial was of unsound mind, but he had no opinion as to Mr: Dial’s mental capacity in October 1970. He did say that the deterioration of Mr. Dial’s faculties was “a gradual thing” that did not happen overnight. Mrs. Parker testified that he started losing his mind before his wife died, but there was competent evidence that his mind was clear until some time after she died.
Mrs. Williams lived a mile or two from her uncle’s house; Mrs. Parker lived in Jackson, over forty miles away. Mr. and Mrs. Tate lived a little further down the highway from Mr. Dial’s house than Mrs. Williams did. For a while after his wife’s death, Mr. Dial ate at Mrs. Williams’s house or she would bring food to his house. He began stopping to visit the Tates and eating breakfast and lunch with them. At some point he stopped eating at Mrs. Williams’s house and would not eat what she brought him. Mr. and Mrs. Williams testified that Mr. Dial told them one day that Mrs. Tate had said Mrs. Williams was trying to poison him “to get what he had.”
Mrs. Tate testified that she did not tell Mr. Dial that Mrs. Williams was trying to poison him, but he had a falling out with Mrs. Williams for reasons unknown to her. She did say he asked her to write an attorney for him about retrieving $5000 of his money that Mrs. Williams and Mrs. Parker had in a bank account in their names.
Mrs. Tate and the witnesses for her case gave the following account of the conveyance in question: One day while Mr. Dial was visiting with Mrs. Tate, Moody Drin-kard, who worked with Pinebuilt Homes, came to her house to talk with her about finding a lot and having a house built for herself. After Mr. Drinkard left, according to Mrs. Tate, Mr. Dial told her he would give her an acre or two of his land to build her house on. Later he offered her one third of his property if she would live there and take care of him.
Mr. Dial went to Mr. Drinkard to see about having a survey made and deeds drawn up. After the survey, Mr. Drinkard had an attorney, Mr. Sidney M. Harrell, draft the deeds. The two men went to Mr. Dial’s house and witnessed him make his mark on the two deeds. Mr. Harrell testified that he explained to Mr. Dial what the documents were and asked if he understood; that Mr. Dial said he understood and appeared to have a clear mind; and that Mr. Dial said Mr. and Mrs. Tate were taking care of him and feeding him. Mr. Drin-kard testified that neither of the Tates was present when Mr. Dial signed the deeds. He also testified that Mr. Dial had personally directed the surveyor; that in his opinion Mr. Dial was of sound mind and signed the deeds of his own free will; and that Mr. Dial said he wanted to give the land to Mr. and Mrs. Tate.
As set out above and as more fully reflected in the record, the evidence was in dispute as to Mr. Dial’s mental condition at the time of the conveyance. Further, the testimony conflicted regarding Mr. Dial’s actions, whether they were the subject of undue influence by the Tates or were motivated by his own free will and his gratitude, affection, and desire to secure the Tates’ continued care and assistance. The Tates argue that their relationship with Mr. Dial was merely one of friendship, not rising to a confidential relationship such as would place the burden on them to prove the openness and fairness argued by Mrs. Parker in issue “C” above.
We find that, to the extent that Mrs. Parker raised the existence of a confidential relationship, the Tates introduced evidence that their influence was not unduly exerted and the transfer was voluntary and “fair, just, and equitable in every respect.” Jones v. Boothe, supra, 270 Ala. at 423, 119 So.2d 203. Mr. Dial contemplated the transaction over a period of time, as evidenced by the *820 fact that the property was surveyed before the conveyance; he retained the majority of the land for his nieces and daughter; and the Tates fed him and cared for him to at least some extent before and after the conveyance. The record clearly shows that Mr. Dial did not want to leave his home, and the willingness of the Tates to move onto the land to look after him contrasts with Mrs. Parker’s act of placing him in a nursing home.
This is a close case, and for that very reason we decline to reverse the judgment of the trial court based on a review of the facts. Where the trial court hears a case presented ore tenus, its decision will not be reversed unless palpably wrong or manifestly unjust. First Alabama Bank v. Coker, 408 So.2d 510 (Ala.1982); see cases collected at 2A Alabama Digest, Appeal and Error, Key # 931(1).
Nor do we find reversible error in the trial court’s decision to exclude the records from the two prior proceedings in that court. One of those cases was a suit by Mrs. Parker to set aside the conveyance of one acre to the Tates. Judgment was entered on an agreement of the parties. “It was not an adjudication on the merits but was merely a pro forma acceptance by [the] court of an agreement between the parties to settle their controversy for reasons undisclosed.” Fuqua v. Patterson, 193 F.Supp. 313 (N.D.Ala.1961), affirmed 295 F.2d 509 (5th Cir.1961). The trial court did not err in excluding the record on the grounds that it was not probative and not relevant.
The other case was a contest by Mrs. Parker of a will filed for probate by Velma Franklin, Mr. Dial’s daughter. “[A] judicial record is not admissible ... where it is sought to be used as against one not a party or privy to the former proceeding.” 32 C.J.S. Evidence § 629 (1964); cf. Wilson v. Wilson’s Estate, 581 S.W.2d 729 (Tex.Civ.App.1979), reversed 587 S.W.2d 674 (Tex.1979), on remand 593 S.W.2d 789 (Tex.Civ.App.1979); Roemelmeyer v. Richard A. Marshall Ins. Agency, 223 So.2d 753 (Fla.Dist.Ct.App.1969).
The judgment is due to be, and is hereby, affirmed.
AFFIRMED.
TORBERT, C.J., and FAULKNER, EM-BRY and ADAMS, JJ., concur.