The defendant, Richard A. Wilson, appeals from a judgment for the plaintiffs, Paula Wehunt, Cynthia Anderson, and Cewilla Garmon, in this action to cancel a deed. We reverse and remand.
The defendant is the youngest of two sons born to Ethel Wilson. The plaintiffs are the children of the defendant's deceased brother. This action stemmed from Ethel Wilson's conveyance of her small farm to the defendant by a deed dated February 9, 1985.[1] At the time of the conveyance, Ms. Wilson, now deceased, was 78 years old.
The plaintiffs alleged, as grounds for cancelling the deed, undue influence on the part of the defendant and a lack of mental competency on the part of his mother. After an ore tenus hearing, the trial court entered a judgment that reads in pertinent part as follows:
 "The court has reviewed, read and reread the trial notes of testimony, the exhibits and the depositions and finds that this matter turns upon the burden of proof. The evidence in this case is in sharp conflict concerning [Ms. Wilson's] mental capacity to execute the deed. There being no necessity to discuss the respective positions of the parties and . . . the testimony and evidence submitted, suffice it to say that it has been proven to the reasonable satisfaction of the court that the defendant . . . was, at the time surrounding the execution of the deed in issue, the dominant party in a confidential relationship with his mother. . . . Upon such proof, the burden of proof shifts to [the defendant] to prove that the transaction was fair, just and equitable in every respect. (Chandler v. Chandler, 514 So.2d 1307 [(Ala. 1987)].)
 "Further, it has been shown to the reasonable satisfaction of the court that [Ms. Wilson] suffered from intermittent periods of incompetency and that such periods [had] been in existence for some extended period of time prior to the execution of the deed; therefore, the burden of proof shifts to the defendant to show that the deed was executed during a lucid interval (Hardee v. Hardee, 261 [265] Ala. 669, 93 So.2d 127
[(1956)].
 "The court is not satisfied from the evidence that the defendant has carried his burdens of proof concerning such issues."
Citing a number of cases, the defendant contends that the trial court erred in placing on him the burden of proving that the conveyance from his mother was free of undue influence. He argues that the plaintiffs bore the burden of proving undue influence on his *Page 993 
part and that they failed to meet their burden. The defendant also contends that the trial court erred in placing on him the burden of proving that his mother was mentally competent when she executed the deed. Again, he argues that the plaintiffs had the burden of establishing a lack of mental competence on the part of his mother and that they failed to meet their burden in this respect. The plaintiffs argue that the trial court properly placed on the defendant the burden of justifying the conveyance and that the trial court correctly concluded that the defendant had not met his burden. We agree with the defendant that the burden of proof in this case rested at all times on the plaintiffs.
 Undue Influence
The trial court correctly ruled as a matter of law that the defendant had a confidential relationship with his mother and that proof sufficient to reasonably satisfy the court of the defendant's dominance in that relationship would create a presumption of invalidity and shift the burden to the defendant to prove that the conveyance was free of undue influence. See, e.g., Chandler v. Chandler, 514 So.2d 1307, 1308 (Ala. 1987), wherein this Court stated:
 "The relation of parent and child is per se a confidential one. The law presumes that the parent is the dominant spirit, but this presumption is not conclusive. 'Where it is made to appear by the proof that the child, and not the parent, is the dominant spirit, then the burden of proof is shifted to the former to establish the fairness of the transaction, and that it was not the result of undue influence.' Dowe v. Farley, 206 Ala. 421, 422, 90 So. 291, 292 (1921); Tipton v. Tipton, 249 Ala. 537, 539, 32 So.2d 32, 34 (1947). See, also, Jones v. Boothe, 270 Ala. 420, 119 So.2d 203
(1960); Orton v. Gay, 285 Ala. 270, 231 So.2d 305
(1970); Wolfe v. Thompson, 285 Ala. 745, 235 So.2d 878 (1970). . . .
". . . .
 ". . . The party seeking to have the deed set aside need only show to the reasonable satisfaction of the court that the grantee was the dominant party in a confidential relationship with the grantor, whereupon the burden shifts to the grantee to show that the transaction was 'fair, just, and equitable in every respect.' Brothers v. Moore, [349 So.2d 1107, 1109
(Ala. 1977)]."
See, also, the cases collected at 7A Ala. Digest,Deeds, key no. 196(3) (1955). However, after carefully reviewing the briefs of the parties and the testimony presented at the hearing, we can find no evidence from which it can be reasonably inferred that the defendant "dominated" his mother, within the meaning of that word as it has been used in our cases. It is well settled that one alleging dominance of a child over a parent must prove that "time and circumstances have reversed the order of nature, so that the dominion of the parent has not merely ceased, but has been displaced, by subservience to the child." Hawthorne v. Jenkins, 182 Ala. 255,260, 62 So. 505, 506 (1913) (emphasis in original). "Subservient" is defined in The American Heritage Dictionary ofthe English Language (1969) as "[u]seful as a means or instrument; serving to promote some end . . . [; s]ubordinate in capacity or function." Black's Law Dictionary 486 (6th ed. 1990) defines "dominate" as "[t]o master, to rule, or to control." Thus, for the burden of proof to shift, it is clear that our cases require proof of more than a reversal of the traditional roles of parent as care giver and child as care recipient; they require proof that the parent's will has become subordinate to the will of the child. It is also clear from our cases that the mere relationship of parent and child alone, even when coupled with some activity on the part of the child in securing the preparation of legal papers for the parent, is not sufficient to prove subservience on the part of the parent, so as to shift to the child the burden of proving an absence of undue influence. See, e.g., Keeble v. Underwood, 193 Ala. 582,586-87, 69 So. 473, 475 (1915), a will contest case wherein this Court noted:
 "It is now well settled that where a donee occupies to the donor a position of trust and confidence, such as that between a beneficiary occupying a confidential relation and the testatrix, and such donee or beneficiary takes part or exercises some activity in the preparation or in the procurement *Page 994 
of the execution of the will, the burden of proof is shifted to the beneficiary to show that the contested instrument was not superinduced by undue influence. Scarbrough v. Scarbrough, 185 Ala. 468, 64 So. 105 [1913]; Bancroft v. Otis, 91 Ala. 279, 8 So. 286, 24 Am.St.Rep. 904 [1890]. This is the general rule. However, while the relationship of parent and child is per se confidential, yet it is well settled that it is always presumed prima facie that in all transactions between them the parent is the dominant party and that such are free from undue influence. The mere relationship alone, coupled with activity on the part of the child in securing the preparation of the will, is not sufficient, under the authorities, to shift the burden of proof upon the child in cases of gift by the parent, as we hold that, prima facie, the parent is the dominant spirit in the transaction, and gifts flow naturally from parent to child. One of the foundations of the rule as to presumption of undue influence is the theory that the donor is the weaker party. While the relation of parent and child is per se confidential, yet in view of the presumption, recognized in this state and abundantly supported by authorities elsewhere, that the parent is the dominant spirit, the burden of proof is not shifted upon the mere proof of relationship and activity, on the part of the beneficiary child, in the preparation of the will.. . ."
(Emphasis added.) See, also, Bain v. Bain, 150 Ala. 453,43 So. 562 (1907) (an action to set aside conveyances from a father to the wife of one of his sons and his son's children).
Without detailing the extensive testimony presented at the hearing, suffice it to say that it shows that over the years the defendant lived near his mother and cared for her in a number of ways. He provided her with financial assistance in her effort to obtain and keep in repair her small family farm. He opened his home to her, even though he had recently remarried; he provided her with assistance in handling her affairs; and he provided transportation for her to various places and functions. None of this evidence suggests to us that Ms. Wilson was subordinate to the will of the defendant, so as to create a presumption that the defendant manipulated her in an attempt to obtain title to the farm. Ms. Wilson could read and write. She insisted on paying some of her bills in cash herself, although the defendant assisted her in writing her checks. The defendant's brother had lived in Georgia and had not participated directly in his mother's day-today care in Alabama. The evidence shows that his periodic visits with Ms. Wilson were short. Ms. Wilson executed the deed in question after returning from an extended visit to Georgia where the defendant's brother, Ms. Wilson's only other child, was dying from cancer and after a Georgia doctor had suggested that she be placed in a nursing home. Ms. Wilson had brought up the subject of a new deed during the return trip with the defendant; there is no evidence tending to show that the defendant brought up the subject of conveying the property. In fact, the undisputed testimony indicates that the defendant arranged to have the deed prepared, but not until a week after Ms. Wilson had returned home from Georgia, and then only after Ms. Wilson had again raised the subject by retrieving her deed from her "little box" and requesting that a new deed be prepared. Although she had intermittent periods of confusion and mental incompetence (see discussion of mental competence, infra), we can find no basis for the trial court's finding that the defendant dominated his mother.
We note the plaintiffs' insistence that "[t]he trial court could hardly fail to find that [the defendant] was the dominant party when by his own testimony he had looked after [his mother's] affairs for years and arranged to have the deed made and her signature notarized." The evidence is undisputed that the defendant helped his mother write her checks and handle her affairs and arranged to have the deed prepared and her signature notarized. However, as previously discussed, evidence of this nature, without more, is simply not sufficient to justify a finding of subservience on the part of the parent, so as to create a legal presumption of undue influence. For examples of cases wherein this Court has held the evidence sufficient to support a finding of dominance, seeHaginas *Page 995 v. Haginas, 598 So.2d 1334 (Ala. 1992) (involving an elderly woman, confined to a nursing home, who was pressured by her son over a period of several years to execute a deed, the son threatening to stop his visits if she did not sign); Brothersv. Moore, 349 So.2d 1107 (Ala. 1977) (involving an elderly woman who could not read or write and whose son had taken over all of her business affairs); Gosa v. Willis, 341 So.2d 699 (Ala. 1977) (involving an elderly couple who had exhibited signs of mental feebleness, had little education, and whose former son-in-law had duped them into believing that the conveyance of their property to him would resolve a "tax problem"); Jackson v.Rodda, 291 Ala. 569, 285 So.2d 77 (1973) (involving a man who had suffered a nervous breakdown after his wife was accidentally killed and whose daughter not only had looked after him and advised him in his personal affairs, but also had "insisted" that he convey his property to her and had promised to "do the right thing by the other children," and then refused to reconvey the property to her father at his request); Ortonv. Gay, 285 Ala. 270, 231 So.2d 305 (1970) (involving an elderly woman who, shortly after the death of her husband, conveyed her real property and turned over significant holdings of personal property to her daughter, who clearly had manipulated her so as to obtain her property); and Jones v.Boothe, 270 Ala. 420, 119 So.2d 203 (1960) (involving an elderly couple who had conveyed their property to their daughter shortly before the death of the father, under circumstances clearly indicating that the daughter had secretly lied to and pressured the couple in an attempt to avoid the operation of the father's will). We find it significant that in each of the last four cases mentioned above at least one of the grantors was alive at the time of the trial and testified directly with respect to the question of dominance. In the first case cited, Haginas v. Haginas, the grantor was coerced into executing the deed by repeated threats on the part of her son that he would not visit her in the nursing home if she did not cooperate with him, and in the second case, Brothers v.Moore, the evidence indicated that the grantor was illiterate, in addition to being totally dependent on her son to handle her business affairs. These cases, we think, are materially distinguishable from the present case.
We conclude, therefore, that it would run counter to our case law, which places primacy on the duty of a child to honor and care for his or her parents; and counter to common sense for us to hold that the evidence surrounding the conveyance from Ms. Wilson to the defendant was sufficient to support a finding of subservience on Ms. Wilson's part and manipulation or control on the defendant's part and, thus, that the conveyance was presumptively the result of coercion and undue influence. From our perspective, the only reasonable inference to be drawn from the evidence with regard to the question of dominance is that the defendant cared for his mother in an attempt to make her life easier at a time when she needed him most. Evidence of concern and care on the part of a child and the acceptance of that care by the parent should not be equated with subservience on the part of the parent or dominance on the part of the child. The law simply does not presume undue influence in the absence of evidence of subservience on the part of the parent, especially when, as here, conveying the property to the child was such a natural thing for the parent to do.
Therefore, because the evidence is insufficient to support the trial court's finding of dominance on the part of the defendant, we hold that its ruling shifting the burden of proof to the defendant on this issue was plainly and palpably wrong.Robinson v. Hamilton, 496 So.2d 8 (Ala. 1986).
 Mental Incompetence
The trial court found that Ms. Wilson had "suffered from intermittent periods of incompetency and that such periods [had] been in existence for some extended period of time prior to the execution of the deed." Based on this finding, the trial court ruled that the defendant bore the burden of proving that his mother had executed the deed during one of her lucid moments. In Hardee v. Hardee, 265 Ala. 669, 677, 93 So.2d 127,134 (1956), relied on by the trial court, this Court stated: *Page 996 
 "The presumption is that every person is sane and the burden of proof is upon the party attacking the conveyance to show the incapacity of the grantor at the very time of the transaction. Halman v. Bullard, 261 Ala. 115, 73 So.2d 351
[1954]. But where the person attacking the conveyance shows that the grantor was habitually insane before the conveyance was attempted to be executed, the burden then shifts to those claiming under the conveyance to show that it was made during a lucid interval. Johnston v. Johnston, 174 Ala. 220, 57 So. 450 [1912], and cases cited; Pike v. Pike, 104 Ala. 642, 16 So. 689 [1894]; Hall v. Britton, 216 Ala. 265, 113 So. 238 [1927]; Halman v. Bullard, supra."
Hall v. Britton, 216 Ala. 265, 267, 113 So. 238, 239 (1927), contains, perhaps, a clearer statement of the rule:
 "In order to render a deed void because of the mental incapacity of the grantor — and the principle is the same for any other signatory — the test is 'not merely that the grantor's mental powers were impaired, but whether he had sufficient capacity to understand in a reasonable manner the nature and effect of the act which he was doing.' 18 Corp.Jur. 218, § 131; White v. Farley, 81 Ala. 563, 8 So. 215 [1886]; Stanfill v. Johnson, 159 Ala. 546, 49 So. 223 [1909].
 "And 'the burden of proof is upon the party attacking a conveyance to show the incapacity of the grantor at the time it is made, and insanity prior to that time does not raise the presumption of insanity at a subsequent time, unless it is shown that the insanity is permanent in its nature. . . . Therefore, proof of insanity at intervals or of a temporary character would create no presumption that it continued up to the execution of the instrument, and the burden would be upon the attacking party to show insanity at the very time of the transaction.' Pritchard v. Fowler, 171 Ala. 662, 55 So. 147 [1911]; Johnson v. Armstrong, 97 Ala. 731, 736, 12 So. 72 [1892]."
The trial court's finding that Ms. Wilson had suffered from intermittent or temporary periods of incompetency before she executed the deed to the defendant is amply supported by the evidence. However, the trial court erred when, based on this finding, it shifted the burden of proof to the defendant. Proof that a person, before executing a deed, had mental incompetence occurring at intervals or had mental incompetence of a temporary character creates no legal presumption that the incompetence continued up to and existed at the moment of the execution of the deed. The burden of proof in cases such as this one, where it is shown that the grantor's mental incompetence was not permanent, is on the party attacking the conveyance to show a lack of mental competence "at the very time of the transaction." Hall v. Britton, supra,216 Ala. at 267, 113 So. at 239.
For the foregoing reasons, the judgment is reversed and the case is remanded for the trial court to reconsider the evidence and to determine whether the plaintiffs met their burden of proving either that the conveyance was the result of undue influence on the part of the defendant or that Ms. Wilson, at the very moment she executed the deed, lacked the mental capacity to understand what she was doing.
REVERSED AND REMANDED.
HORNSBY, C.J., and ALMON, KENNEDY and COOK, JJ., concur.
[1] The City of Albertville later acquired title to this property by condemnation. The city paid $181,400 for the property, and it is one half of those proceeds ($90,700) that the plaintiffs ultimately seek to recover by cancelling the deed.