68 So.2d 48

### STRICKLAND et ux.
### v.
### MALONE et al.
#### 6 Div. 354.

Supreme Court of Alabama.

June 30, 1953.

Rehearing Denied Nov. 27, 1953.

Jones & McEachin, Tuscaloosa, for appellees.

Mayfield & Massa, Tuscaloosa, for appellants.

GOODWYN, Justice.

This is an appeal from a decree sustaining demurrers to a bill in equity. The bill, in substance, alleges the following:

The complainants, husband and wife, on January 5, 1951, entered into a written contract with respondent, Paul Malone, for the sale and purchase of 403.37 acres of land in Tuscaloosa County, Alabama. The body of this contract, leaving out the land description, is as follows:

"Know All Men By These Presents, That in consideration of the sum of Five Dollars ($5.00) in cash, paid to Clyde H. Strickland and wife, Mrs. Lili A. Strickland, as Sellers, by Paul R. Malone as Purchaser, receipt of which payment being hereby acknowledged, the said Clyde H. Strickland and wife, Mrs. Lili A. Strickland, agree to sell and the said Paul R. Malone agrees to purchase, on the terms hereinafter stated, the following described lands located and being in Tuscaloosa County, Alabama, to-wit: (description omitted).

"The said Paul R. Malone agrees to pay the balance of the purchase price of Eleven Dollars ($11.00) an acre, less the Five Dollars ($5.00) paid in consideration of this agreement, subject to the terms of this agreement, on or before the expiration of sixty days from the date of this agreement, and upon the payment of said balance of the purchase price the undersigned Clyde H. Strickland and wife, Lili A. Strickland, will execute and deliver unto the said Paul R. Malone or any party or parties designated by him, at the time of such payment, a full warranty deed to the above described lands.

"It is understood and agreed that the total acreage being sold *in* four hundred three and thirty-seven one-hundredths (403.37) acres, and that the full purchase price, including the $5.00 paid herewith, is $11.00 per acre or Four Thousand Four Hundred Thirty-seven and 7/100 Dollars ($4,437.07).

"Paul R. Malone may purchase such abstract or abstracts of title to the above described property, or any portion or part thereof, as may be desired, and in the event any curative work may be necessary to cure the title, is hereby given the option of paying for the curative work or demanding return of the $5.00 herewith, in which event this contract is to become null and void, title being subject to the approval of Paul R. Malone's attorneys.

"Paul R. Malone, at his own expense, may have any parcel or all of the above described land survey (sic) by any registered and licensed surveyor and should the number of acres shown by said survey not amount to at least 403 acres, the said Paul R. Malone is given the option of paying $4,-437.07 for said property or of declaring this contract null and void because the acreage is short. However, if said property is purchased, 'the purchase price shall be the sum of $4,437.07.

"It is further understood that Sellers will not sell a part or portion of the hereinabove described land, should it develop that the acreage does not total 403 acres or that title is defective to a part or portion of said property.

"This contract is assignable by the parties hereto and said full warranty deed is to be made to such party or parties designated by Paul R. Malone.

"Upon the sale and conveyance being completed, possession of the entire property described above shall thereupon be delivered to the purchaser or purchasers.

"In Witness Whereof, we hereunto set our hands and seals on this the 5th day of January, 1951."

This contract is attached to the bill of complaint as exhibit "A" and is made a part of the bill. Pursuant to this agreement, the complainants executed a general warranty deed to respondents. The date of the deed is not shown by the record, but it is alleged in the bill of complaint as follows:

"That four days prior to the expiration of the sixty days set out in Complainants' exhibit A, that the respondent, Paul Malone, caused the Honorable Bruce McEachin to call the Complainant, Clyde Strickland, on the telephone, and tell him that Malone was ready to close the deal, and to please draw the deed to Paul R. Malone, Robert Malone, and E. L. Hendricks. That the Complainant, Clyde Strickland, in reliance on this conversation, called the Honorable C. W. Gross, attorney, who had no knowledge of the existing written agreement, and instructed him to go to Mr. .Bruce McEachin's office to get the old deeds, and prepare a new deed from the Complainants to the Respondents, and submit the same to Honorable Bruce McEachin for approval."

The bill further alleges that such deed was prepared by Mr. Gross and the agreed purchase price of $4,437.07 was paid to complainants; that "prior to the acceptance of said deed, and while the written agreement (plaintiff's Exhibit A) was in full force and effect, the respondent, Paul R. Malone, caused his attorney, Bruce McEachin, to make an investigation of the title of said lands," and that said investigation revealed that one H. L. Phillips was claiming twenty acres of said lands and "possibly that the State of Alabama was claiming an additional forty acres of said lands." It is then alleged:

"That the said Respondent, Paul R. Malone, fraudulently and wrongfully withheld this information from your Complainants, at the time he accepted said warranty deed from them for the Respondents. That at the time Respondent Malone accepted said warranty deed, and prior thereto, that he was wrongfully and fraudulently, conspiring, conniving, and scheming to obtain a full warranty deed from the Complainants, without the restrictions or reservations agreed to between the parties and set out in the Complainants' exhibit 'A,' as to acreage and title, and then, sue, the Complainants, for a breach of said warranty deed.

"That on the 16th day of April, 1951, the Respondents, caused, Attorney Bruce McEachin, to write a letter to the Complainant, Clyde H. Strickland, stating that he was liable for a breach of warranty as to acreage and title, and liable for all breach of warranties which would develop in the future. That the Respondents are now, fraudulently conspiring to sue the Complainants, for a breach of warranty in said deed in violation of, said written agreement (Plaintiff's Exhibit 'A.')."

The prayer of the bill is for a decree declaring "that the effect of said warranty deed, is that of a quitclaim deed, or that the Complainants are not responsible to the Respondent, by virtue of any warranties as to acreage or title, contained therein, or in the alternate"; that "said deed is null and void, and of no effect whatsoever," and that the $4,437.07 heretofore deposited with the Register by the complainant be ordered paid to the respondents; that Respondent, Paul H. Malone, be required to respond in damages to the Complainant, for the trouble, time and expense he has caused the Complainants by fraudulently asserting and claiming, a breach of warranty in violation of his written agreement with the Complainants," including a reasonable solicitor's fee; and that respondents "be enjoined from filing any suit at law or equity against your Complainants for any alleged breach of the warranties as to title or acreage contained in said deed."

■■ In support of the equity of the bill, appellants assert the following two propositions:

I. "If a deed is drawn with the intention of effectuating a prior agreement, but by mistake of the draftsman, whether of fact or of law, the deed does not do this, equity will grant relief."

II. "A deed procured by fraud perpetrated upon the grantor, even though not void at law, is voidable in equity."

There is ample authority to support these two propositions as abstract statements of law, but we do not think they have any

controlling applicability in the case at hand. Code 1940, Tit. 47, § 136.

█ As we interpret the contract, there is an unequivocal agreement on the part of complainants to sell, and similarly on the part of respondent Paul Malone to buy, the land described therein. There is only one out, so to speak, and that is the provision, usual to such contracts, giving to the purchaser the opportunity of first satisfying himself about the title. The provision here is that the purchaser may purchase an abstract of title to the property, "as may be desired," and if curative work is found necessary he is given the option of paying for it or demanding return of the five dollars already paid; in which latter event, the contract becomes null and void. It is expressly provided that the title is "subject to the approval of Paul R. Malone's attorneys." There is further provision giving to the purchaser the right to have any part or all of the land surveyed, and if it be found that the acreage is not at least 403 acres the purchaser "is given the option of paying $4,437.07 for said property or of declaring this contract null and void because the acreage is short." It is further expressly provided that the sellers will not sell a part of the land "should it develop that the acreage does not total 403 acres or that title is defective to a part or portion of said property."

The insistence seems to be that these optional provisions show that the parties intended to place on the purchaser the duty of disclosing to the sellers any ascertained or suspected defects in sellers' title; and that the purchaser's failure to disclose his findings in this respect resulted not only in the sellers giving, through mistake, a full warranty deed, but constituted a fraud on them.

We do not find any provision in the contract which could be construed as *requiring* the purchaser to investigate or otherwise determine the nature of sellers' title to the land. This was a matter left entirely to the purchaser, at his own option. Under the contract, he could have disregarded these optional provisions altogether. There was no duty placed on him to investigate the title, nor to inform the sellers of his or his attorneys' findings or opinion with respect thereto. He could have demanded of sellers a "full warranty deed" as soon as the contract was executed without investigating the title at all. The contract clearly calls for such a deed, and that was what was given. There is no averment of mistake in the description, nor that the deed contains any provision which is not usually contained in a "full warranty deed." The deed was prepared by the sellers' own attorneys, and there is nothing to indicate that it is not in strict compliance with the contract. There is no provision for the giving of a quitclaim deed, nor of any deed except a "full warranty deed." It was for the purchaser, and the purchaser alone, to decide whether he would take the warranty deed agreed upon, or to declare the contract at an end if the title should be found defective or that there was a shortage in the acreage.

The trial court, in sustaining the demurrers, held that the bill was without equity. In this we concur. The decree appealed from is due to be, and is, affirmed.

Affirmed.

LIVINGSTON, C. J., and STAKELY and MERRILL, JJ., concur.

LAWSON and SIMPSON, JJ., dissent.