BEATTY, Justice.
The defendant, Johnny W. Holland, appeals from a judgment in favor of plaintiffs, Jean Aliena Hoffman and Charles W. Hoffman, declaring a certain deed null and void. We affirm.
This case involves the transfer of real property among family members. Defendant Holland and co-plaintiff Jean Hoffman are brother and sister. Plaintiffs, the Hoffmans, executed a deed on April 28, 1981, transferring 53 acres of land to the defendant, and the circumstances surrounding this transfer resulted in a complaint seeking an annulment of the deed. The complaint alleged fraud which induced the signing of the deed and lack of consideration for the deed. In its written judgment, the trial court held in pertinent part:
“[HJaving considered all of the evidence and testimony presented in open court with respect to the plaintiffs’ claim against the defendant, and the court finding from all of said evidence that the defendant fraudulently induced the plaintiffs into executing that certain deed ... by falsely representing to the plaintiffs that he would pay the plaintiffs the sum of Ten Thousand and no ($10,000.00) Dollars for said property, and by falsely representing to the plaintiffs that in the event he failed to pay said consideration that they were authorized to reconvey said property to themselves by virtue of a power of attorney heretofore executed by the defendant to the plaintiff, Jean Aliena Hoffman, recorded in book 301, page 148 of the office of the probate judge of Colbert County, Alabama, dated April 22, 1968, and the court further finding from the evidence that the plaintiffs in reliance upon said statements made by the defendant executed the said deed ... and the court further finding from the evidence that the defendant has entirely failed to pay any consideration for said property, and that he further shortly after having obtained said deed from the plaintiffs revoked the power of attorney....
“It is therefore ORDERED, ADJUDGED and DECREED by the court that said deed, executed by the plaintiffs to the defendant, dated the 28th day of April, 1981, and recorded in deed book 392 at page 823-824 in the office of the probate judge of Colbert County, Alabama, be and hereby is declared null and void for all purposes.
“Done and ORDERED at Tuscumbia, Alabama, this the 7th day of January, 1983.”
The issue on appeal is whether the record contains evidence which justified the annulment of the deed by the trial court. We find that there was such evidence.
Alabama has long recognized that a deed obtained by fraud will be set aside. Johnson v. Cook, 73 Ala. 537 (1883); Prowell v. Wilson, 219 Ala. 645, 123 So. 38 (1929); Strickland v. Malone, 260 Ala. 62, 68 So.2d 48 (1953). The evidence in this case was disputed; however, a review of the record supports the finding that there were material representations and promises by the defendant, which he knew to be incorrect and which he had no intention of performing. These representations and promises constituted fraud, and the plaintiffs relied upon them to their detriment, thus justifying the cancellation of the deed. Cross v. Maxwell, 263 Ala. 509, 83 So.2d 211 (1955).
The evidence produced at trial showed that the defendant, Holland, was in prison from 1966 through 1980. In 1968, Holland executed a power of attorney giving his sister, Jean Hoffman, the power to act on his behalf in all lawful matters, including the right to handle transactions of property. Jean Hoffman testified that she had *933 originally obtained approximately 67 acres from the defendant, of which 53 acres is the subject of this case. The defendant’s primary argument below was that there was no consideration for the transfer of the 67 acres and that he had transferred this property to his sister to hold for him until his release from the penitentiary, at which time it would be returned to him. There was testimony by the plaintiffs, a letter from the defendant to his sister, written in 1972, and a sworn affidavit of the defendant taken while he was in prison, however, which supported the conclusion that he deeded the land to Jean Hoffman in exchange for a valuable consideration.
Evidence concerning the land transaction in question included a letter to Jean Hoffman dated March 5, 1980, prior to the defendant’s release from prison. Holland wrote: “Said like I said before I might need to bumb you out of a few acres and then turn right around and mortgage you and Ted [another brother] or both of you all of the property in order to get started in which I figure will be a profitable business.” Following the defendant’s release, he stayed with the plaintiffs in their home until about a week after the transfer of the property to him. There were other conversations with the plaintiff about the defendant’s plans to build a shop and start a business. The defendant’s brother, Ted Holland, also testified that the defendant borrowed $12,000.00 from him for the purpose of building a shop on the land that is the subject of this case.
With regard to the transfer of the deed to her brother, and the consideration agreed upon, Jean Hoffman testified as follows:
“A. He [Holland] told me that I didn’t need a mortgage, I asked him about going to a lawyer and having a contract or a mortgage or something to that effect to protect myself and he says well you don’t need it, said you got the Power of Attorney and I said but what if you were to get married Johnny and he said I don’t intend to get married, not for a long time and he said that with the Power of Attorney, he says if I don’t pay you or anything were to happen to me, he said you could take the land back with my shop sitting on it.
[[Image here]]
“MR. HOVATER CONTINUES: Now Jean at that time Mr. Hunt has stated in his opening statement that under a Power of Attorney you could act for Johnny but not on your behalf, at that time had you had any legal training or had you been to law school or anything that you would know what you could do or what you couldn’t do under a power of attorney?
“A. No.
[[Image here]]
“MR. HOVATER CONTINUES: Jean what was the agreed upon sales price between you and Johnny on the land?
[[Image here]]
“A. Ten thousand dollars.
“Q. Now Jean after the date of the deed did it come to your attention that Johnny was attempting to sell the land?
“A. Yes.
[[Image here]]
“Q. After it came to your attention that he was trying to sell the land what did you next do?
“A. I went to the courthouse to see about the Power of Attorney and I found out that he had withdrawn my power of attorney.
“Q. At this time I would like to show you Plaintiff’s Exhibit Number 4 and ask if you recognize what this is?
“A. Yes, this is when he withdrawed.
“Q. Is this what you found recorded at the courthouse when you checked on that?
“A. Yes, sir.
[[Image here]]
“MR. HOVATER CONTINUES: Jean after you found out that the Power of Attorney had been released is that when you came to me?
“A. Yes, the same day.
[[Image here]]
*934 “MR. HOVATER CONTINUES: Have you been paid any amounts on this land since the execution of this deed?
“A. No sir.
[[Image here]]
“MR. HOVATER CONTINUES: Now Jean when you executed a deed to Johnny on the land that is the subject of the complaint was this in reliance upon his representations to you about the mortgage, I mean about not taking the mortgage and about the Power of Attorney?
“A. Would you ask the question again?
“Q. When you signed the deed to Johnny on the land that is the subject of the complaint, did you base and rely upon his representations at that time—
“MR. HUNT: We object to that on grounds it calls for an uncommunicated operation of her mind.
“BY THE COURT: Overruled.
“MR. HOVATER CONTINUES: Did you rely upon Johnny’s representation about the Power of Attorney and not taking a mortgage at that time Jean?
“A. Yes, I believed him.
“Q. And is that what caused you to sign the deed, your belief in Johnny?
“A. Yes.
[[Image here]]
“MR. HOVATER CONTINUES: Jean was there any definite date set for the payment on the mortgage — not on the mortgage but on the payment for the land?
“A. No.
“Q. What was the conversation as to when it would be paid?
“MR. HUNT: Now we object to it on the grounds that it violates the parol evidence rule.
“BY THE COURT: Overruled.
“MR. HOVATER: You can answer Jean.
“A. He told me that he would have to work probably a couple of years while his shop was being built and get his business going, but probably a couple of years but he said I will be paying you all along and it is possible that I can have you paid by then.
“Q. So the conversation in effect said he would start paying you immediately but pay you some along, is that right?
■ “A. Yes, said he would pay me all along.
“Q. It is your testimony that he hadn’t paid anything?
“A. No, sir.
“MR. HOVATER: All right, that is all.”
Charles Hoffman testified that he was present during the conversations between his wife and Holland when they discussed the consideration, the power of attorney, and the mortgage, and that it was in reliance upon the representations by Holland that he and his wife executed the deed on April 28, 1981.
Evidence was also before the trial court that the defendant had asked a prospective buyer of the property not to tell his sister of their business transaction. The prospective buyer did in fact contact Jean Hoffman, and his doing so prompted the actions resulting in this suit. In addition, there was ample evidence before the court which established the confidential relationship between this brother and his sister. Jean and Charles Hoffman had helped Holland while he was in prison, and had opened their home to him when he was released. They were interested in helping him get started in a new business. For all these reasons, the court could have found that they believed him and were misled by him when he promised to build a business on the property and pay them for the deed to it.
Fraud accompanied with damage to the defrauded party gives a right of action. Code of 1975, § 6-5-100. Willful representations of a material fact made to induce another to act, and upon which he does act to his injury, will give a right of action, Code of 1975, § 6-5-103. This Court in both Doswell v. Hughen, 266 Ala. 87, 94 So.2d 377 (1957), and Jones v. Boothe, 270 Ala. 420, 119 So.2d 203 (1960), found sufficient evidence to set aside deeds. These cases involved transactions between family *935 members and a confidence in the defrauding party.
Clearly, there was evidence from which the trial court could find fraud. There was evidence that the plaintiffs relied on the representations and promises made by the defendant and other evidence supported the finding of no consideration. Findings based on evidence heard orally by the trial court will not be disturbed unless plainly erroneous or manifestly unjust. Snow v. Boykin, 432 So.2d 1210 (Ala.1983); Lamar v. Lamar, 263 Ala. 391, 82 So.2d 558 (1955); Haden v. Boykin, 259 Ala. 504, 66 So.2d 708 (1953). No such error exists here.
Let the judgment be affirmed.
AFFIRMED.
TORBERT, C.J., and MADDOX, JONES and SHORES, JJ., concur.